IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES E. LEWIS, | ) | CASE NO. 3:12CV0387 |
| | ) | |
| Petitioner, | ) | JUDGE BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| JASON BUNTING, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition of James E. Lewis ("Lewis") for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on February 16, 2012.  Lewis is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Lewis*, Case No. 08-CR-757 (Sandusky County 2009). For the reasons set forth below, Lewis's petition should be dismissed with prejudice.

I.

The state appellate court reviewing Lewis's conviction during his direct appeal found the following facts to be relevant to his case:

{¶ 5} . . . On July 13, 2009, James Lewis stopped his commercial truck at the Vermillion Valley Service Plaza in Amherst Township, Lorain County, Ohio. Appellant was traveling with his wife and two young children.  Subsequently, appellant and his wife, Spencer, had an argument.  The altercation escalated.

Appellant's wife called 9–1–1 to report a domestic disturbance. Following the emergency call, appellant and his family entered the rig and began to drive away.

{¶ 6} In response to the emergency call, an Ohio State Highway Patrol trooper, Hoffman, arrived at the plaza through the exit ramp in an attempt to stop appellant's rig. Hoffman, with his overhead lights activated, blocked the exit ramp, but was unable to prevent the rig from leaving the plaza and a pursuit ensued. Shortly thereafter, five Ohio State Highway Patrol troopers joined in the pursuit of appellant. Throughout the pursuit, six police cruisers had their sirens and lights activated. Road spikes were laid in an attempt to stop appellant's truck. Although appellant indicated he would pull over, he did not stop or pull over for nearly one hundred miles.

{¶ 7} After the lengthy chase in a construction zone on Interstate 77, appellant finally pulled over his rig. The police apprehended him and safely secured Spencer and the children. Hoffman observed that the left side of Spencer's cheek was swollen. Interestingly, appellant subsequently alleged no memory of the highway pursuit on the purported basis of his high blood sugar level.

{¶ 8} On July 15, 2009, appellant was indicted by the Sandusky County Grand Jury on one count of failure to comply with the order or signal of a police officer, in violation of R.C. 2921.331(B) and (C)(5)(a)(ii) and on three counts of abduction, in violation of R.C. 2905.02(A)(2). All four charges are third-degree felonies. The day before trial, appellant was visited by his counsel at the county jail in order to discuss potential resolution of appellant's case.

{¶ 9} A jury trial was held in the Sandusky County Court of Common Pleas on March 30, 2010. Immediately before trial, appellant and his counsel wanted to discuss a plea bargain. Due to his incarceration, appellant arrived wearing a prison issued orange jump suit. His counsel brought alternate clothes that he had purchased for appellant to change into. Appellant did not like the size which was larger than his ideal size. The trial court judge gave appellant a final opportunity to change and explicitly warned appellant that an appearance before a jury in jail clothing could prejudice his case. Instead, appellant stubbornly elected to forego wearing the civilian clothes furnished by his counsel and proceeded to wear the orange jump suit.

{¶ 10} The jury determined appellant was guilty of one count of failing to comply with the order or signal of a police officer, in violation of R.C. 2921.331(B) and (C)(5)(a)(ii). He was also found guilty of one count of abduction, in violation of R.C. 2905.02(A)(2). Appellant was ordered to serve concurrent terms of five years in prison for the two third-degree felony convictions.

*State v. Lewis*, 2011 WL 3654507, at *1-*2 (Ohio App. Aug. 19, 2011).

Lewis filed in the state appellate court a notice of appeal of his conviction on June 10, 2010. Lewis asserted two assignments of error in his appellate brief:

First Assignment of Error:

> Mr. Lewis was deprived of his right to a fair trial and due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution when the trial court compelled Mr. Lewis to stand trial wearing identifiable jail clothing.

Second Assignment of Error:

> Trial counsel provided ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution.

On August 19, 2011, the state appellate court affirmed the judgment of the trial court.

Lewis timely filed a notice of appeal in the Ohio Supreme Court. In his memorandum in support of jurisdiction, Lewis asserted the same two assignments of error, phrased as propositions of law. On November 30, 2011, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On December 13, 2011, Lewis filed in this court a petition for a federal writ of habeas corpus. Lewis asserts two grounds for relief in his petition:

> GROUND ONE: Petitioner was compelled to wear jail clothing by the trial court, which was identifiable as such to the jury, and [the] trial court gave no curative or cautionary instruction to the jury not to infer petitioner's guilt due to jail attire.

> GROUND TWO: Counsel for petitioner failed to object to the compelling of the court of petitioner wearing identifiable jail attire. Further, counsel for petitioner presented and argued to the jury a non-existent defense during closing argument.

(Capitalization and punctuation altered from the original.) Respondent filed an

3

Answer/Return of Writ on June 14, 2012. Doc. No. 8. Lewis has not filed a traverse. Thus, the petition is ready for decision.

II

*A. Jurisdiction*

The Court of Common Pleas of Sandusky County, Ohio sentenced Lewis. Lewis filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) & (d). Sandusky County is within this court's geographic jurisdiction. Thus, this court has jurisdiction over Lewis's petition.

*B.    Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of Lewis's remaining claims involve legal issues that can be independently resolved without additional factual inquiry.

*C.    Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas

corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted). Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits. 28 U.S.C. § 2254(b)(2).

5

Lewis has no state remedies available for his claims. Because no state remedies remain available to him, Lewis has exhausted state remedies.

*D.     Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental

6

miscarriage of justice." *Coleman*, 501 U.S. at 750.

Respondent does not contend that Lewis has defaulted either of his grounds for relief.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established

7

Federal law, as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001). The court will examine Lewis's grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.  *Ground one: Whether Lewis's right to a fair trial was denied because the court compelled him to wear prison garb without giving a curative instruction*

Lewis's first ground for relief asserts that the trial court violated his right to a fair trial by compelling him to wear prison clothes and failing to give a curative instruction. Respondent denies that the trial court compelled Lewis to wear prison grab.

In *Estelle v. Williams*, 425 U.S. 501 (1976), the Supreme Court found that defendants should not be forced to appear for trial in prison garb, acknowledging that "clothing is so likely to be a continuing influence throughout the trial that . . . an unacceptable risk is presented of impermissible factors coming into play." *Williams,* 425 U.S. at 505. The Court continued, however, as follows:

> [C]ourts have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before the jury in prison garb. Instead, they have recognized that the particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire. The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases

8

> show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury.

*Williams*, 425 U.S. at 507-08 (citations omitted); *see also United States v. Cramer*, 2012 WL 2505579, at *7 (6th Cir. June 29, 2012). Given that some defendants may wish to appear at trial in prison garb, the Court concluded that the burden is on the petitioner to object to being tried in such dress. If the petitioner does not so object, a later court may not find that the trial court compelled the defendant to wear prison garb. *Williams,* 425 U.S. at 508-09. The Court then concluded:

> [A]lthough the State cannot, consistent with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation.

*Williams,* 425 U.S. at 512-13 (footnote omitted).

In addressing the corresponding assignment of error during Lewis's direct appeal, the state appellate court wrote in relevant part as follows:

> {¶ 12} Generally, a criminal defendant should not appear before the jury in prison clothes or restraints because it may impair the due process presumption of innocence. Fourteenth Amendment to the United States Constitution. *Estelle v. Williams* (1976), 425 U.S. 501, at 504, 96 S.Ct. 1691, 48 L.Ed.2d 126; *United States v. Brown* (2004), 367 F.3d 549, at 554. However, the court is not required to furnish alternate clothing. *Brown,* supra, at 554. . . .
>
> {¶ 14} In the matter before us, appearing in jail clothing was not so inherently prejudicial as to deny appellant's constitutional right to a fair trial or due process of law. Nor was it such a situation of unusual restraint. The record unambiguously and directly reflects appellant knowingly, voluntarily, and intelligently waived his right to challenge this point.
>
> {¶ 15} The trial court judge specifically indicated that counsel for appellant purchased alternate clothing appropriate for a trial. In conjunction with this, the trial court judge explicitly asked appellant twice if he wanted to change into alternate clothing. Appellant was informed that he would suffer the consequences of any inference the jury might draw from his attire. Appellant

> indicated he understood the possible consequences and nevertheless refused to change clothes.  The fact that appellant's counsel did not measure appellant's exact size is irrelevant.  Appellant was not compelled to wear the orange jump suit.  Reasonable alternative attire was provided.  Appellant refused it.

*Lewis*, 2011 WL 3654507 at *2-*3.

The state appellate court found that Lewis did not object to wearing prison garb, that he was offered reasonable civilian clothing and refused it, and that he was cautioned by the court that he might be prejudiced by wearing prison garb.  Lewis nevertheless chose to do wear prison clothes.  Under these circumstances, no reasonable person could conclude that the trial court compelled Lewis to wear prison garb.  As Lewis was not compelled to wear prison garb, the holding in *Williams* requires the conclusion that there was no constitutional violation in allowing Lewis to be tried in prison clothing.

As the choice to wear prison garb was Lewis's, there was no basis for requesting a cautionary instruction to the jury not to let Lewis's clothing influence their decision.  This is particularly true because Lewis was warned of the prejudicial impact such clothing might have on the jury and because of his failure to ask for a cautionary instruction.  Lewis's insistence on wearing prison garb despite warnings of its possible prejudicial impact and his failure to ask for a cautionary instruction permits the inference that Lewis's choice of clothing was an attempt to win sympathy from the jury.  In any case, the Supreme Court has never held that when a defendant chooses to wear prison garb during trial, the defendant's right to due process requires a cautionary instruction not to let the defendant's clothing influence their decision.  As Lewis does not demonstrate that failing to give a cautionary instruction was contrary to or involved an

10

unreasonable application of a holding of the Supreme Court, he fails to demonstrate that he is entitled to relief.  Lewis's first ground for relief is without merit.

*B.      Ground two:  Whether counsel rendered ineffective assistance*

In his second ground for relief, Lewis argues that he received ineffective assistance of counsel because his attorney failed to object to the court's compelling Lewis to wear prison garb and argued a non-existent defense during closing argument. Respondent denies that counsel was ineffective.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms."

11

*Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.   *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation."  *United States v. Cronic,* 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Nix v. Whiteside,* 475 U.S. 157, 175 (1986).  "Unreliability or

unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Determining whether counsel was ineffective is a mixed question of law and fact.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  When a federal court reviews the conclusions of a state court regarding counsel's alleged ineffectiveness, both the legal and the factual tests for determining whether habeas relief is warranted are brought into play.  *Id.* at 395-96.  That is, the reviewing court must determine whether the decision of the state court regarding counsel's alleged ineffectiveness (1) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and (2) resulted in a decision that was contrary to or involved an unreasonable application of a holding of the Supreme Court.  *Id.*  There are two ways in which a state court decision may involve an unreasonable application of a holding of the Supreme Court:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407.

As has already been discussed, the court did not compel Lewis to wear prison garb. Indeed, the court cautioned Lewis against doing so, and reasonable street clothes were available to him. Therefore, the performance of Lewis's attorney was not deficient for failing to object to a non-existent court order compelling Lewis to wear prison garb. As the court committed no constitutional violation by allowing Lewis to wear prison garb during the trial, any objection to such attire would have been overruled. Lewis suffered no prejudice, therefore, from his counsel's failure to object. In sum, Lewis fails to satisfy either prong of his burden of showing both objectively deficient performance and prejudice resulting from that deficient performance.

Although the details of the second part of Lewis's claim of ineffective assistance are not presented in his habeas petition, examination of the corresponding state claim on direct appeal reveals that Lewis asserted in the state appellate court that counsel was ineffective for failing to assert an insanity defense rather than arguing diminished capacity. After correctly stating the standard for adjudicating ineffective assistance of counsel, the state appellate court wrote as follows:

> {¶ 22} Appellant contends that but for counsel's ineffective assistance, the result would have been different. Appellant maintains that because he did not remember the 98 mile chase, a plea of not guilty by reason of insanity should have been entered. We do not concur.
>
> {¶ 23} In circumstances that indicate that entering a plea of not guilty by reason of insanity would be unsuccessful, a decision not to enter that plea is not unreasonable, for purposes of defendant's right to effective assistance of counsel. *State v. Anaya* (2010), 191 Ohio App.3d 602, ¶ 34.
>
> {¶ 24} The defense of not guilty by reason of insanity must be entered at the time of arraignment, except that the court for good cause shown shall permit such a plea to be entered at any time before trial. Crim.R. 11(H). A trial court is given sound discretion to determine whether a defendant's reasons constitute "good cause" under Crim.R. 11(H); *State v. Lidge* (Apr. 7, 1993), 9th Dist.App. No.

15824.  Thus, the trial court's decision will not be disturbed absent a showing of an abuse of discretion.  The term abuse of discretion implies that the court's decision was arbitrary, unreasonable, or unconscionable.  *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶ 25} Appellant cites to and relies on *State v. Brown* (1992), 84 Ohio App.3d 414, 421–422, which states a "failure to enter a plea of not guilty by reason of insanity pursuant to Crim.R. 11 falls below an objective standard of reasonable representation."  However, this reference is misplaced.

{¶ 26} In *Brown,* the defendant's counsel made no effort to challenge a psychiatric report that was submitted to the court by the prosecuting attorney.  The defendant had no recollection of life for a period of several days, and no recollection of the crimes of which he was accused.  Counsel did not make any request to have the examining psychiatrist testify given the defendant's circumstances.  As a result, the trial court found there was no trial tactic or strategy which would reasonably have led trial counsel under such circumstances to fail to enter a plea of not guilty by reason of insanity on behalf of his client.

{¶ 27} The case before us is not akin to *Brown* because the record irrefutably exhibits that appellant was coherent and could recollect the events in great detail both prior to and after the chase.  The record reflects that appellant offered an explanation for the "little discussion" he had with his wife in which she was struck.  Notably, appellant even disagreed with whether she had a red mark on her cheek after she was struck.  Conversely, *Brown* was premised upon the party lacking any memory of the events.

{¶ 28} In point of fact, the record contains ample evidence from appellant's own testimony that runs counter to the claimed memory loss basis of the purported ineffective assistance of counsel.  Appellant unambiguously conveyed that he could clearly remember the entire day's events leading up to the pursuit, including details of the argument immediately preceding the highway pursuit.  Appellant articulates this memory in the following exchange:

{¶ 29} "Q: It was a discussion, is that how you remembered it?

{¶ 30} "A: Well, it was an argument over some stuff that happened in New York with her family and her.  That's what we had an argument over.

{¶ 31} " * * *

{¶ 32} "Q: Do you remember what you were arguing about?

{¶ 33} "A: Well, like, some things you don't forget, yeah, okay.

15

{¶ 34} "Q: So what were you arguing about?

{¶ 35} " * * *

{¶ 36} "A: Well, okay, I feel—you want me to tell, I'll tell if you request to tell.  But it was an issue of a tax thing, some taxes that were filed in the state of New York, by her family.  That the [sic] had found out that she was living with me in Kentucky and that's what—they were looking for her and sent her a letter and that's why she took off with the two kids.  That's why I filed for divorce.  So it's more than what she's telling you."

{¶ 37} In addition to the recollection prior to the chase, the record reveals that appellant likewise recalled the events subsequent to the 98 mile pursuit. Appellant stated in pertinent part:

{¶ 38} "Q: Well, you do remember—let's go back to the end of this. You do remember seeing that EMT; is that right?

{¶ 39} "A: I did not see that—I don't remember that EMT personally.

{¶ 40} "Q: Or any EMT?

{¶ 41} "A: I remember being in an ambulance.

{¶ 42} " * * *

{¶ 43} "Q: I guess my point is this, you can kind of remember up at the plaza on the Ohio Turnpike to a point, and then you kind of remember at the other end, over in Akron, you saw the EMT.  Is that kind of what your testimony was, do you agree?

{¶ 44} "A: I remember going back with my two kids.  I remember going back to the truck.  I don't remember how long we was there, whatever.

{¶ 45} "A: * * * I don't know how an hour or so can go by and you not remember, but like I said to you, I don't remember anything about the police or anything or what I told you.  I remember the ambulance.  I remember I was sick.

{¶ 46} "Q: But you do remember before and after this incident?

{¶ 47} "A: Well, I told you that part I remember."

{¶ 48} The record shows that appellant had no complaints after the highway chase.  Appellant did not want to go to the hospital.  He refused medical transportation.  Consistent with this, the medical report from the responding

> paramedic indicated appellant had no loss of consciousness, no chest pain, no shortness of breath, and no headache.  The record contains no evidence or indicia supportive of appellant's claims on appeal of memory loss such that a plea of not guilty by reason of insanity would have been indicated.  Conversely, the record contains ample evidence undermining the legitimacy of such an assertion.
>
> {¶ 49} As such, the trial court was reasonable when it determined appellant did not demonstrate good cause to allow a not guilty by reason of insanity plea subsequent to arraignment.  Appellant has wholly failed to establish a reasonable probability that the result would be different if such a plea had been entered.
>
> {¶ 50} Lastly, as the Supreme Court of Ohio declared in *State v. Fulmer* (2008), 117 Ohio St.3d 319, ¶ 66, a diminished capacity defense is not recognized by Ohio courts.  Therefore, directly attributing the high blood sugar level diabetic condition as a cause to appellant's behavior as a defense was simply unavailable to appellant at the outset.  Appellant was not prejudiced in the matter before us.

*Lewis*, 2011 WL 3654507at *4-*6.

The state appellate court found that counsel was not ineffective for failing to assert a defense of insanity and that, in any case, Lewis was not prejudiced by counsel's failure to assert an insanity defense or by making an argument of diminished capacity.  Lewis offers no facts or argument in opposition to the findings of the state appellate court.  As the state appellate court's statement of the law is in accord with the holdings of the Supreme Court and its statement of the facts unchallenged, its conclusion that Lewis's counsel did not render ineffective assistance is entirely reasonable and entitled to this court's deference.  Accordingly, Lewis's second ground for relief should be dismissed as without merit.

IV.

For the reasons given above, Lewis's petition should be dismissed with prejudice.

Date: September 26, 2012  /s/ Nancy A. Vecchiarelli
United States Magistrate Judge

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111.**